UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DILIA YANETH NAVARRETE-NAVARRETE,

Petitioner,

v.

Warden, Otay Mesa Detention Center, and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.

Case No.: 26-cv-4984-JES-GC

**ORDER GRANTING PETITION FOR HABEAS CORPUS**

**[ECF No. 11]**

Before the Court is Petitioner Dilia Yaneth Naverrete-Navarrete's ("Petitioner") First Amended Petition for Writ of Habeas Corpus. ECF No. 11 ("FAP"). On October 6, 2026, Respondents filed their Return to the Petition. ECF No. 13 ("Return"). On October 8, 2026, Petitioner filed a Traverse. ECF No. 14 ("Trav."). For the reasons set forth below, this Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner, a native and citizen of Honduras, entered the United States in 2018 with her two children. FAP at 2. On October 27, 2022, she was ordered removed *in absentia* after her counsel failed to provide her notice of her hearing date. *Id.* at 2; Return at 2.

Petitioner was taken into custody on August 12, 2026, after eight ICE agents came to her house and informed her that she had been ordered removed. FAP at 2–3. Petitioner was transferred to Otay Mesa Detention Center, where she remains in custody. *Id.* at 3.

Petitioner filed a motion to reopen her immigration case on August 24, 2026, and the motion was denied the same day. *Id.* She then filed an appeal with the Board of Immigration Appeals (BIA), which remains pending. *Id.*

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas*, 533 U.S. at 687; *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Noncitizens who are subject to a final order of removal are detained under 8 U.S.C. § 1231. *See* 8 U.S.C. § 1231. Section 1231 creates a 90-day removal period during which the noncitizen subject to the removal order must be detained. § 1231(a)(1), (2). Section 1231(a)(6) authorizes detention after the 90-day removal period but "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. In *Zadvydas*, the Court limited this post-removal-period detention to a "period reasonably necessary to bring about removal," finding that six months was "presumptively reasonable." *Id.* at 689, 701.

After this six-month "grace period," the noncitizen must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," whereupon the burden shifts to the Government to "respond with evidence

sufficient to rebut that showing." *Id.* at 701; *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003). Where removal is not significantly likely in the reasonably foreseeable future, "the court should hold continued detention unreasonable and no longer authorized by statute" and grant the writ. *Owino v. Napolitano*, 575 F.3d 952, 955 (9th Cir. 2009) (quoting *Zadvydas*, 533 U.S. at 699–700).

## III. DISCUSSION

Petitioner contends that her continued detention violates *Zadvydas* and 8 U.S.C. § 1231 because "the six month grace period has ended," and there is "no significant likelihood of removal in the reasonably foreseeable future." FAP at 3–4. Respondents disagree, arguing that Petitioner's detention falls within the six-month grace period and claiming "there is a significant likelihood of removal in the reasonably foreseeable future." Return at 2–4 (citing authorities finding detention for less than six months lawful under *Zadvydas*).

### A. The Six-Month Grace Period Under *Zadvydas* Has Expired.

The first step in the *Zadvydas* analysis is determining whether Petitioner's detention falls within the six-month grace period that would entitle it to a presumption of reasonableness. The parties disagree over when the grace period began: Petitioner argues that it began on October 27, 2022, the date of her final order of removal, while Respondents implicitly suggest that it began on August 12, 2026, the date Petitioner was re-detained. *See* FAP at 5; Return at 2–3. The Court finds that this issue has been addressed by the undersigned in a recent decision, *Osson v. LaRose*, No. 3:26-cv-4834-JES-JLB, ECF No. 16 (S.D. Cal. Oct. 9, 2026). Therefore, the Court elects to follow the reasoning it stated in *Osson* and incorporates it by reference. *Id.*

Here, the six-month period in which Petitioner's detention was presumptively reasonable began on October 27, 2022, when Petitioner was ordered removed. *See* Trav. at 3 (conceding that Petitioner's order of removal became "administratively final" on October 27, 2022). It ended six months later, on April 27, 2023. Petitioner's present detention

therefore falls far outside the six-month grace period under *Zadvydas* and is not entitled to any presumption of reasonableness.

**B. Petitioner Has Carried His Initial Burden Under *Zadvydas*.**

With the six-month period having expired, Petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner has met this burden.

Petitioner testifies that she has a pending appeal with the BIA. ECF No. 11-1 at 3. She cites reputable statistics that show that the average processing time for a BIA appeal is over 19 months, and that delay has only been increasing. Trav. at 5–6. Further, BIA's clearance rate is presently less than 10 percent—meaning less than one 1 out of every 10 appeals that are pending at the start of a three-month period is decided within that period. *Id.* at 6.

Respondents concede that they may not remove Petitioner until the BIA has ruled on Petitioner's pending appeal. Return at 4. Because Petitioner has good reason to believe the BIA will not make a decision on her appeal in the reasonably foreseeable future, she also has good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Thus, she has met her burden under *Zadvydas*.

**C. Respondents Fail to Meet Their Burden Under *Zadvydas*.**

The burden having shifted, Respondents must produce "evidence sufficient to rebut" Petitioner's showing. *Zadvydas*, 533 U.S. at 701. They have not done so.

Respondents claim that they will "effectuate [Petitioner's] removal as soon as practicable once the BIA has ruled" on Petitioner's appeal. Return at 4. They have offered nothing beyond the above assertion to rebut Petitioner's showing regarding the decision timeline for BIA appeals or to otherwise support their claim that there is a significant likelihood of removal in the reasonably foreseeable future. *See generally* Return. On this record, Respondents have failed to carry their burden under *Zadvydas*. The Petition must, therefore, be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus. Respondents are **ORDERED** to **<u>immediately</u>** release Petitioner from custody, subject to any conditions of her prior release that existed at the time she was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **<u>October 20, 2026</u>**, confirming that Petitioner has been released. The Clerk of Court is ORDERED to CLOSE this case.

**IT IS SO ORDERED.**

Dated: October 13, 2026

Honorable James E. Simmons Jr.
United States District Judge